UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------- x

ROBERT P. LYNCH,                          :
                                          :
            Plaintiff,                     :
                                          :   Case No.: 23-cv-4800-NRM-LKE
      vs.                                 :
                                          :   **ORAL ARGUMENT REQUESTED**
                                          :
ROMAN CATHOLIC DIOCESE OF                 :    Served: February 3, 2025
BROOKLYN, ST. RAPHAEL CATHOLIC            :
PARISH, FATHER JAMES K. CUNNINGHAM,       :
GOOD SHEPHERD PARISH,                     :
                                          :
            Defendants.                   :

----------------------------------------------------------- x

---

### THE BROOKLYN DIOCESE'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

---

KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, New York 10007
(212) 808-7800

Attorneys for Defendant
The Brooklyn Diocese

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................... 1

FACTUAL ALLEGATIONS ........................................................................................ 4

ARGUMENT ............................................................................................................... 6

POINT I     THE AMENDED COMPLAINT FAILS TO ADEQUATELY ALLEGE
SUFFICIENT FACTS UNDER IQBAL AND TWOMBLY TO STATE
ANY CLAIM FOR RELIEF ................................................................... 6

POINT II     THE NEGLIGENCE-BASED CLAIMS FAIL BECAUSE
THE BROOKLYN DIOCESE OWED NO DUTY TO PLAINTIFF .................... 7

           A.     The In Loco Parentis Duty Does Not Apply to An Adult ............................ 8

           B.     The Brooklyn Diocese Did Not Owe Any Duty as a Landowner ............... 9

           C.     Respondeat Superior Is Not Applicable ..................................................... 10

           D.     The Final Alleged Duties of Care Fail for the Same Reasons as
Plaintiff's Negligent Supervision/Retention Cause of Action .................. 10

POINT III     THE NEGLIGENCE CLAIMS ALSO SHOULD BE DISMISSED
BECAUSE THE AMENDED COMPLAINT FAILS TO ALLEGE THAT
THE BROOKLYN DIOCESE KNEW OR SHOULD HAVE KNOWN OF
ANY DANGER POSED BY CUNNINGHAM ................................................... 11

POINT IV     THE GROSS NEGLIGENCE CLAIM FAILS BECAUSE
THE UNDERLYING NEGLIGENCE CLAIMS FAIL ......................................... 14

POINT V     THE IIED CLAIM ALSO FAILS BECAUSE IT IS TIME-BARRED ................ 15

           A.     The ASA Does Not Apply Because the Meeting Was Distinct from
Sexual Violations as Defined under Article 130 of the New York
Penal Law ................................................................................................... 16

           B.     The Factual Allegations Themselves Do Not Involve Forms of
Outrageous Conduct Recognized by New York Courts ............................. 18

POINT VI     THE BREACH OF FIDUCIARY DUTY CLAIM ALSO FAILS ........................ 19

CONCLUSION ............................................................................................................ 21

i

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

Ashcroft v. Iqbal,
556 U.S. 662 (2009)..........................................................................................6

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007)..........................................................................................6

Blanco v. Success Acad. Charter Sch., Inc.,
722 F. Supp. 3d 187 (S.D.N.Y. 2024).............................................................18

Bouchard v. N.Y. Archdiocese,
2006 WL 1375232 (S.D.N.Y. May 18, 2006) ..................................................19

Chanko v. Am. Broadcasting Cos. Inc.,
27 N.Y. 3d 46 (2016) .......................................................................................18

Chau v. Donovan,
357 F. Supp. 3d 276 (S.D.N.Y. 2019)..............................................................10

Cohen v. Wales,
133 A.D.2d 94, 518 N.Y.S.2d 633 (2d Dep't 1987) ...........................................7

Cort v. Marshall's Dep't Store,
No. 14-CV-7385 (NGG)(RER), 2015 WL 9582426 (E.D.N.Y. Dec. 29, 2015) ....................12

Curley v. AMR Corp.,
153 F.3d 5 (2d Cir. 1998)................................................................................14

David v. Weinstein Co. LLC,
2019 WL 1864073 (S.D.N.Y. Apr. 24, 2019).....................................................7

Dent v. U.S. Tennis Ass'n, Inc.,
No. CV-08-1533 (RJD)(VVP), 2008 WL 2483288 (E.D.N.Y. June 17, 2008)........................5

Digiorgio v. Roman Cath. Diocese of Brooklyn,
No. 520009/2019, 2021 WL 1578326 (N.Y. Sup. Ct., N.Y. Cnty. Apr. 22, 2021) ..............8

Doe v. Abdulaziz Bin Fahd Alsaud,
12 F. Supp. 3d 674 (S.D.N.Y. 2014)................................................................12

Doe v. Doe,
83 Misc.3d 408, 213 N.Y.S.3d 875 (N.Y. Sup. Ct., N.Y. Cnty. 2024) ..................17

Doe v. Roman Cath. Diocese of Rochester,
12 N.Y.3d 764 (2009) .................................................................................19

Doe v. Uber Techs., Inc.,
551 F. Supp. 3d 341 (S.D.N.Y. 2021).......................................................11

Ehrens v. Lutheran Church,
385 F.3d 232 (2d Cir. 2004)...................................................................9, 11

Ellis v. Washington,
409 F. Supp. 3d 148 (W.D.N.Y. 2019) .......................................................9

Guerriero v. Diocese of Brooklyn,
No. 21-CV-4923 (MKB), 2024 WL 2826097 (E.D.N.Y. Mar. 28, 2024) .............15, 19, 20, 21

Haybeck v. Prodigy Servs. Co.,
944 F. Supp. 326 (S.D.N.Y. 1996) .............................................................10

Irons v. Inst. for Cmty. Living, Inc.,
No. 17-CV-7052 (ILG), 2019 WL 121675 (E.D.N.Y. Jan. 7, 2019).........................................9

J.D. v. Roman Catholic Diocese of Brooklyn,
203 A.D.3d 880, 161 N.Y.S.3d 786 (2d Dep't 2022) ...........................20

John SZ v. Archdiocese of N.Y.,
2021 NY Slip Op 32490(U) (Sup. Ct., N.Y. Cnty. Oct. 26, 2021).........................................21

Kimso Apartments LLC v. Dish Network Servs. LLC,
No. 16-CV-06834 (AMD)(RLM), 2017 WL 8780452 (E.D.N.Y. Dec. 20, 2017) ................................................................................................6

LaFrantz v. St. Mary's Roman Cath. Church,
No. 21-CV-04920 (NGG)(CLP), 2024 WL 216718 (E.D.N.Y. Jan. 19, 2024)...........15, 20, 21

Levin v. Sarah Lawrence College,
-- F. Supp. 3d --, 2024 WL 4026966 (S.D.N.Y. 2024).....................16, 17

Mars v. Diocese of Rochester,
196 Misc. 2d 349, 763 N.Y.S.2d 885 (N.Y. Sup. Ct., N.Y. Cnty. 2003)..............................20

Moraes v. White,
571 F. Supp. 3d 77 (S.D.N.Y. 2021)........................................................16

Murray v. Nazareth Reg'l High Sch.,
579 F. Supp. 3d 383 (E.D.N.Y. 2021) .............................................10, 11, 12, 15

Ortiz v. Parkchester North Condominiums,
2018 WL 2976011 (S.D.N.Y. June 13, 2018) .........................................13

Pasternack v. Lab. Corp. of Am.,
    892 F. Supp. 2d 540 (S.D.N.Y. 2012)..................................................................15

Paul v. City of New York,
    2017 WL 4271648 (S.D.N.Y. Sept. 25, 2017)...........................................................6

PC-4 Doe v. Archdiocese of N.Y.,
    2021 WL 2719337 (N.Y. Sup. Ct., N.Y. Cnty. July 1, 2021).................................20

Pulka v. Edelman,
    40 N.Y.2d 781 (1976) ...............................................................................................7

Purdy v. Public Adm'r of Westchester,
    72 N.Y.2d 1 (1988) ...................................................................................................7

Reid v. McKelvey,
    2024 WL 4345585 (S.D.N.Y. Sept. 30, 2024).......................................................17

In re Roman Cath. Diocese of Rockville Ctr., N.Y.,
    651 B.R. 146 (S.D.N.Y. Bankr. 2023) .....................................................................8

Tambriz v. P.G.K. Luncheonette, Inc.,
    124 A.D.3d 626, 2 N.Y.S.3d 150 (2d Dep't 2015) ..................................................9

Waters v. N.Y.C. Hous. Auth.,
    69 N.Y.2d 225 (1987) ...............................................................................................7

**Statutes**

Adult Survivors Act, N.Y.C.P.L.R.§ 214-j........................................................ *passim*

New York Penal Law Article 130.................................................................16, 17, 18

**Other Authorities**

Black's Law Dictionary ................................................................................................8

Federal Rule of Civil Procedure 12(b)(6) .............................................................1, 6

Federal Rule of Civil Procedure 12(f) .........................................................................5

## PRELIMINARY STATEMENT

Defendant The Roman Catholic Diocese of Brooklyn, New York (the "Brooklyn Diocese"), moves to dismiss plaintiff Robert P. Lynch's ("Plaintiff") Amended Complaint dated July 29, 2024 as against the Brooklyn Diocese (the "Amended Complaint" or "Am. Compl.") (ECF No. 41) under Federal Rule of Civil Procedure 12(b)(6) because the facts alleged as against the Brooklyn Diocese are not sufficient to state a claim for which relief can be granted.[1]

This is a case filed under New York's Adult Survivors Act ("ASA"). Plaintiff seeks to hold the Brooklyn Diocese liable for a single incident of sexual abuse by Father James K. Cunningham against the Plaintiff at Good Shepherd Parish ("Good Shepherd") when Plaintiff was 20 years old. The Amended Complaint describes Cunningham as a "father figure and confidant" to Plaintiff who mentored Plaintiff after his father died. In the fall of 1996, Plaintiff alleges that he was alone with Cunningham in Cunningham's room at Good Shepherd, and they were "wrestling" when Cunningham pinned Plaintiff down on the bed, started kissing Plaintiff's neck, forcibly pulled Plaintiff's pants down and began to fondle Plaintiff's penis before Plaintiff kicked Cunningham in the groin and fled the scene.

Several months later, Plaintiff reported the abuse by Cunningham to Auxiliary Bishop Catanello. In February 1997, the Brooklyn Diocese allegedly summoned Plaintiff to a room where Plaintiff faced Cunningham and recounted the sexual abuse he had suffered and listened to Cunningham's denial. Also present was Father James I. Frost ("Frost"), who Plaintiff alleges also abused him.[2]

---

[1]  As to the other co-defendants, Good Shepherd Parish and St. Raphael Parish will be filing their own motions to dismiss (see ECF Nos. 48–49) and Father James K. Cunningham filed an Amended Answer to the Amended Complaint on September 4, 2024. (ECF No. 45.)

[2]  The Amended Complaint also alleges Frost abused Plaintiff, but this action only seeks to recover for the single incident involving Father Cunningham. The allegations against Frost are the subject of two separate actions by Plaintiff: one under the ASA in this Court, captioned Robert P. Lynch v.

Plaintiff brings nine causes of action based on these allegations. The first three are alleged only against Cunningham: (battery (Count I), assault (Count II), and false imprisonment (Count III)). The remaining six causes of action (Counts IV–IX) seek to hold the Brooklyn Diocese liable on various theories of negligence (Counts IV–VI and VIII), intentional infliction of emotional distress ("IIED") (Count VII) and for breach of fiduciary duty (Count IX).

The negligence claims (Counts IV–VI and VIII) against the Brooklyn Diocese should be dismissed because the Amended Complaint does not allege any facts specific to the Brooklyn Diocese establishing any relationship between the Brooklyn Diocese and Plaintiff creating a duty that can support a negligence claim. The Amended Complaint describes Cunningham as a "father figure and confidant" to Plaintiff but provides no further details on this relationship, insinuating the relationship was per se illicit. Father Cunningham was only a few years ahead of Plaintiff—he had just graduated from seminary a few years earlier and became an ordained priest at the time of the alleged abuse. There is nothing untoward about a recent graduate fraternizing with a 20-year-old living in the college seminary. The bare existence of a relationship between a graduate and undergraduate (both over the age of 18) does not impose a duty on the Brooklyn Diocese just because the Brooklyn Diocese ran the seminary.

Accordingly, the causes of action for negligence (Count IV), negligent hiring, retention and supervision (Count V), gross negligence (Count VI), and negligent infliction of emotional distress ("NIED") (Count VIII) all fail for lack of duty and should be dismissed.

---

Roman Cath. Diocese of Brooklyn, et al., No. 23-cv-08687-NRM-LKE (the "Frost Action") to address claims stemming from allegations after Plaintiff turned 18, and one under the Child Victims Act in N.Y. Supreme Court, Kings County, to address claims stemming from Frost's abuse of Plaintiff as a minor. (See Am. Compl. ¶¶ 24–25.) As set forth in the Brooklyn Diocese's concurrent motion to dismiss in the Frost Action, Plaintiff's claims against the Brooklyn Diocese in that case are just as meritless and warrant dismissal.

The negligence claims also fail because Plaintiff alleges no facts that raise a plausible inference that the Brooklyn Diocese either knew or should have known that Cunningham had a propensity for the misconduct alleged, and instead relies entirely on conclusory allegations. The Amended Complaint does not allege that Cunningham engaged in similar misconduct prior to Plaintiff's abuse, and does not allege that Plaintiff reported the abuse at the time it occurred. Thus, even if the Brooklyn Diocese owed a duty to protect Plaintiff from harm, it did not breach that duty because it had no notice.

Accordingly, because there is no duty and no notice to the Brooklyn Diocese, all four negligence-based claims (Counts IV–VI and VIII) fail and should be dismissed.

Plaintiff's IIED claim (Count VII) also fails because the only intentional action alleged to have been taken by the Brooklyn Diocese—summoning Plaintiff to a meeting with Diocesan representatives in February 1997—is time-barred under the ASA. Both the plain language of the ASA and established New York caselaw have limited IIED claims to criminal actions as defined under New York criminal statutes. The meeting with Diocesan representatives in February 1997, however, does not involve any criminal conduct. Further, the factual allegation that Plaintiff was called into a meeting to confront his accused perpetrators does not rise to the level of conduct so extreme and outrageous as to be utterly intolerable in a civilized society as required for an IIED claim under New York law.

Plaintiff's fiduciary duty claim (Count IX) fails because the Amended Complaint alleges no facts showing that Plaintiff was in a unique relationship of trust with the Brooklyn Diocese. In the absence of any relationship establishing a duty or facts demonstrating a breach of duty, all of the claims against the Brooklyn Diocese in the Amended Complaint fail. As set forth in detail below, the claims against the Brooklyn Diocese should be dismissed with prejudice.

## FACTUAL ALLEGATIONS[3]

The Brooklyn Diocese is a religious corporation organized and doing business in Brooklyn and Queens, New York.  (Am. Compl.  ¶¶ 31–32.)

The Amended Complaint alleges that St. Raphael Catholic Parish and Good Shepherd Parish are not-for-profit organizations "duly existing under the laws of the State of New York." (Id. ¶¶ 33–34.)  St. Raphael and Good Shepherd are actually religious corporations.[4]  Good Shepherd is a separate legal entity from the Brooklyn Diocese.[5]  The Brooklyn Diocese does not own or operate Good Shepherd's parish, church, or school.

Plaintiff was born on January 9, 1976 and raised in a Catholic family.  (Id. ¶ 36.) Plaintiff was a student at St. Raphael School at St. Raphael Parish from first through eighth grade and attended high school at Cathedral Preparatory School and Seminary ("Cathedral Prep").  (Id. ¶ 38.)  Plaintiff includes allegations in the Amended Complaint regarding sexual abuse from 1992 to 1994 by Father Frost, a priest at St. Raphael Parish, but this action only seeks relief related to the single incident of alleged abuse by Cunningham.  (Id. ¶¶ 43–62.)

Plaintiff alleges one incident in Cunningham's room at Good Shepherd Parish in 1996. Cunningham allegedly pinned down Plaintiff, kissed Plaintiff, and forcibly touched Plaintiff's penis.  (Id. ¶¶ 66–67.)  Plaintiff freed himself from Cunningham and reported the incident to "Church authorities."  (Id. ¶¶ 68–69.)  Plaintiff was allegedly "summoned to the Diocese" in

---

[3]  Unless otherwise stated, all facts referenced herein are taken from the Amended Complaint and are assumed to be true for the purposes of this motion only.

[4]  While St. Raphael Parish is named as a defendant in the Amended Complaint, none of the allegations regarding Cunningham are alleged to have taken place at this parish.  Accordingly, St. Raphael Parish should be dismissed as a defendant from this action.

[5]  Good Shepherd's certificate of incorporation is attached as Exhibit A to the Declaration of Randall L. Morrison, Jr. (the "Morrison Declaration") and accompanying Request for Judicial Notice.

1997, "was led into a room where he was forced to face Father Frost and Father Cunningham one after another," and "was forced to recount in detail the sexual abuse." (Id. ¶¶ 72–73.)

In 2018, Plaintiff was offered a settlement payment as part of the Brooklyn Diocese's Independent Reconciliation and Compensation Program, which Plaintiff refused. (Id. ¶¶ 92–94.)[6]

The Amended Complaint alleges that the Brooklyn Diocese "knew or should have known" that Cunningham posed a threat of sexual abuse and had a propensity to commit sexual abuse, but offers no factual basis for this assertion, and does not explain how the Brooklyn Diocese either knew or should have known. (Id. ¶¶ 12, 123, 129, 136, 153.) Further, the Amended Complaint summarily alleges that "Defendants knew, or should have known, that there was an unreasonable risk of harm to children who interacted with Cunningham" (id. ¶ 126), but does not identify any other instances where Cunningham engaged in such conduct, or was accused of such conduct.

The Amended Complaint insinuates a nefarious picture based on innocuous interactions between Plaintiff and Cunningham that would not arouse any outside observer's suspicions. Indeed, the Amended Complaint alleges that Cunningham was a mentor to Plaintiff, and the Parish helped provide financial support to Plaintiff's family after Plaintiff's father died unexpectedly. (Am. Compl. ¶¶ 3, 65.) Further, Plaintiff concedes that mentorship between parishioners and clergy is nothing out of the ordinary—he acknowledges that he was also mentored by Bishop Catanello. (Id. ¶ 70.) In the absence of any knowledge of a propensity for

---

[6]     The Amended Complaint contains inappropriate allegations regarding prior settlement discussions (see Am. Compl. ¶¶ 92–94) that should be stricken under Federal Rule of Civil Procedure 12(f). See, e.g., Dent v. U.S. Tennis Ass'n, Inc., No. CV-08-1533 (RJD)(VVP), 2008 WL 2483288, at *4 (E.D.N.Y. June 17, 2008) (granting Rule 12(f) motion to strike paragraphs in a pleading because they referenced an offer of settlement).

abuse, there is nothing inherently suspicious about the interactions between Plaintiff and Father Cunningham.

## ARGUMENT

### POINT I

### THE AMENDED COMPLAINT FAILS TO ADEQUATELY ALLEGE SUFFICIENT FACTS UNDER IQBAL AND TWOMBLY TO STATE ANY CLAIM FOR RELIEF

The Amended Complaint does not specify what the Brooklyn Diocese did to enable the abuse of the Plaintiff, how it did it, when it did it, or how it could even have been aware. The Amended Complaint offers "mere legal conclusions couched as factual allegations"; it "has no factual content" insofar as the Brooklyn Diocese is concerned. Kimso Apartments LLC v. Dish Network Servs. LLC, No. 16-CV-06834 (AMD)(RLM), 2017 WL 8780452, at *4 (E.D.N.Y. Dec. 20, 2017). Bare assertions that the Brooklyn Diocese "knew of Father Cunningham's propensity to engage in sexual misconduct" (Am. Compl. ¶ 12) without facts are insufficient to state a claim for relief under the Iqbal and Twombly standards.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This standard demands "more than a sheer possibility that a defendant has acted unlawfully." Id. Plausibility "depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious they render plaintiff's inferences unreasonable." Paul v. City of New

York, 2017 WL 4271648, at *4 (S.D.N.Y. Sept. 25, 2017) (quoting L-7 Designs, Inc. v. Old

Navy, LLC, 647 F.3d 419, 430 (2d Cir. 2011)).

**POINT II**

**THE NEGLIGENCE-BASED CLAIMS FAIL BECAUSE
THE BROOKLYN DIOCESE OWED NO DUTY TO PLAINTIFF**

The Amended Complaint asserts four negligence-based claims: (i) negligence (Count

IV); (ii) negligent training/supervision/retention (Count V); (iii) gross negligence (Count VI);

and NIED (Count VIII). Each of those claims fail because the Brooklyn Diocese owed no duty

to protect Plaintiff from Cunningham under these circumstances. "An action for negligence does

not lie unless there exists a duty on the part of the defendant and a corresponding right in the

plaintiff. The common law imposes no duty to control the conduct of another or to warn those

endangered by such conduct, in the absence of a special relationship . . . ." Cohen v. Wales, 133

A.D.2d 94, 95, 518 N.Y.S.2d 633, 634 (2d Dep't 1987) (citing Palsgraf v. Long Island R. Co.,

248 N.Y. 339, 341-42 (1928)); see also Purdy v. Public Adm'r of Westchester, 72 N.Y.2d 1, 8

(1988); Waters v. N.Y.C. Hous. Auth., 69 N.Y.2d 225, 228–29 (1987); Pulka v. Edelman, 40

N.Y.2d 781, 783–84 (1976). Without "a duty running directly to the injured person there can be

no liability in damages." David v. Weinstein Co. LLC, 2019 WL 1864073, at *6 (S.D.N.Y. Apr.

24, 2019). "[A] defendant generally has no duty to control the conduct of third persons so as to

prevent them from harming others, even where . . . [a] defendant can exercise such control." Id.

The Amended Complaint relies on these theories of duty: (1) "in loco parentis" (Am.

Compl. ¶¶ 115–16); (2) landowner-invitee (id. ¶¶ 118–22); (3) "a duty of care" arising from

Cunningham's "known propensity for sexual misconduct" (id. ¶ 123); and (4) a duty "by virtue

of the high degree of vulnerability and risk of sexual abuse inherent in permitting [Cunningham]

access to [Plaintiff] in a private, unsupervised setting" (id. ¶ 117).

## A. **The In Loco Parentis Duty Does Not Apply to An Adult**

In loco parentis is not applicable here because the Brooklyn Diocese is not a school and Plaintiff was not a student at Good Shepherd when the alleged abuse occurred. New York courts only apply the in loco parentis duty in the school context. See In re Roman Cath. Diocese of Rockville Ctr., N.Y., 651 B.R. 146, 163 (S.D.N.Y. Bankr. 2023) ("The Diocese is not a school and therefore is not subject to the special duty of in loco parentis.") (citing C.Q. v. Est. of Rockefeller, No. 20-CV-2205 (VSB), 2021 WL 4942802, at *6 n.5 (S.D.N.Y. Oct. 21, 2021) ("New York courts have been reluctant to apply the doctrine of in loco parentis too far outside the school context."); Digiorgio v. Roman Cath. Diocese of Brooklyn, No. 520009/2019, 2021 WL 1578326, at *9 (N.Y. Sup. Ct., N.Y. Cnty. Apr. 22, 2021) ("It does not appear, however, that the doctrine of in loco parentis can simply be applied to churches by way of analogy to schools, as plaintiff suggests. That would discount the instant application as to the Diocese on that basis alone."). Indeed, even the Black's Law Dictionary definition of an in loco parentis relationship indicates it only applies to supervision of minors. See In Loco Parentis, Black's Law Dictionary (12th ed. 2024) (to establish an in loco parentis relationship, an individual must "act as a temporary guardian or caretaker of a child, assuming some or all of a parent's responsibilities") (emphasis added). Since there is no school involved in Plaintiff's allegations, the in loco parentis duty does not apply.

Plaintiff claims that the Diocese had this special relationship with him because his mother "entrusted the Diocese . . . with the well-being of her son" and that the Diocese "accepted custody" of Mr. Lynch. (Am. Compl. ¶¶ 115–16.) There is no allegation the Brooklyn Diocese was ever aware of Plaintiff's mother's employment. The mere fact that Plaintiff's mother was employed by a separate parish, St. Raphael, is insufficient to establish an in loco parentis

relationship with the Brooklyn Diocese.  Therefore, any negligence-based claims based on <u>in loco parentis</u> must be dismissed.

**B.**   **<u>The Brooklyn Diocese Did Not Owe Any Duty as a Landowner</u>**

The Amended Complaint also alleges a duty "by virtue of [the Brooklyn Diocese's] status as landowner[] since [Plaintiff] participated in programs and activities on the Diocese . . . premises."  (Am. Compl. ¶¶ 118–22.)  This claim fails because the Brooklyn Diocese is not the owner or operator of Good Shepherd.  Roman Catholic Church of the Good Shepherd, in Brooklyn—a separate and distinct corporate entity from the Brooklyn Diocese—owned and operated Good Shepherd.  (<u>See</u> Morrison Declaration and accompanying Request for Judicial Notice, at Exs. B and C.)

A landowner-invitee claim can only be asserted against a property owner who controls the property at issue or has a contractual duty to maintain security.  <u>Tambriz v. P.G.K. Luncheonette, Inc.</u>, 124 A.D.3d 626, 627–28, 2 N.Y.S.3d 150, 152–53 (2d Dep't 2015); <u>Ellis v. Washington</u>, 409 F. Supp. 3d 148, 156 (W.D.N.Y. 2019); <u>Irons v. Inst. for Cmty. Living, Inc.</u>, No. 17-CV-7052 (ILG), 2019 WL 121675, at *2 (E.D.N.Y. Jan. 7, 2019).  The Brooklyn Diocese is neither the property owner of Good Shepherd nor under a contractual duty to maintain security there.  The landowner-invitee relationship claim therefore fails.

Plaintiff's negligent hiring, retention and supervision claim fails for this reason as well.  Such a claim requires an allegation that the alleged abuse "was committed on the employer's premises or with the employer's chattels."  <u>Ehrens v. Lutheran Church</u>, 385 F.3d 232, 235 (2d Cir. 2004).  The Amended Complaint does not allege that Cunningham used the Brooklyn Diocese's chattels to commit the alleged abuse, and, as set forth above, cannot allege that it occurred on the Brooklyn Diocese's premises.

## C.    Respondeat Superior Is Not Applicable

That Cunningham is alleged to have been a Diocesan employee also does not support a negligence claim. As an initial matter, the Brooklyn Diocese does not concede that it employed Cunningham at the time of the alleged abuse. He worked for Good Shepherd. Any negligence claim based on respondeat superior still fails because sexual assault plainly falls outside of an employee's scope of employment as a matter of law. See Murray v. Nazareth Reg'l High Sch., 579 F. Supp. 3d 383, 387 (E.D.N.Y. 2021) ("When it comes to sexual abuse, New York courts repeatedly have held that it 'arise[s] from personal motives' and does not 'further an employer's business, even when committed within the employment context.'") (quoting Ross v. Mitsui Fudosan, 2 F. Supp. 2d 522, 531 (S.D.N.Y. 1998)); Haybeck v. Prodigy Servs. Co., 944 F. Supp. 326, 330 (S.D.N.Y. 1996) (Sotomayor, J.) ("In cases specifically involving sexual misconduct by employees, New York courts have carefully avoided extending liability to employers"); Chau v. Donovan, 357 F. Supp. 3d 276, 291 (S.D.N.Y. 2019) ("[N]o decision in New York has been cited to date in which the doctrine of respondeat superior was held to apply to sexual assault").

The Brooklyn Diocese cannot be vicariously liable for Cunningham's alleged sexual assault. To the extent the negligence-based claims are based on respondeat superior, they must be dismissed.

## D.    The Final Alleged Duties of Care Fail for the Same Reasons as Plaintiff's Negligent Supervision/Retention Cause of Action

Plaintiff further alleges the Brooklyn Diocese had a duty "by virtue of the high degree of vulnerability and risk of sexual abuse inherent in permitting [Cunningham] access to [Plaintiff] in a private, unsupervised setting" (Am. Compl. ¶ 117) and that the Brooklyn Diocese "had a duty of care to [Plaintiff] because [it] knew [Plaintiff] was likely to come within the influence and supervision of Fr. Cunningham, an individual with a known propensity for sexual

misconduct."  (Id. ¶ 123).  The Brooklyn Diocese did not "permit" access to Plaintiff.  There is

no allegation the Brooklyn Diocese knew of any relationship.  Thus, these purported duties also

fail.

## POINT III

### THE NEGLIGENCE CLAIMS ALSO SHOULD BE DISMISSED BECAUSE THE AMENDED COMPLAINT FAILS TO ALLEGE THAT THE BROOKLYN DIOCESE KNEW OR SHOULD HAVE KNOWN OF ANY DANGER POSED BY CUNNINGHAM

The Amended Complaint summarily asserts that "the [Brooklyn] Diocese and Good

Shepherd Parish knew" or "should have known of Father Cunningham's propensity" "to engage

in sexual misconduct" (Am. Compl. ¶ 12, 136), and that the Brooklyn Diocese knew

Cunningham had a "known propensity for sexual misconduct" (Am. Compl. ¶ 123), but pleads

no facts to support any of those conclusions.  Without facts, the claims fail.

A duty to prevent an employee from causing harm is breached only when "the employer

knew or should have known of the employee's propensity for the conduct which caused the

injury prior to the injury's occurrence."  Ehrens, 385 F.3d at 235 (internal citations and

quotations omitted).  "New York courts . . . have held in employee sexual misconduct cases that

an employer is only liable for negligent supervision or retention if the employer is aware of

specific prior acts or allegations against the employee."  Murray, 579 F. Supp. 3d at 390 (citing

Doe v. Abdulaziz Bin Fahd Alsaud, 12 F. Supp. 3d 674, 680–81 (S.D.N.Y. 2014)).  Allegations

of broad patterns of malfeasance by an employer's own employees that are not "specific to the

[employee]" at issue in the litigation are insufficient, even where the employer is purportedly

aware of those patterns.  Doe v. Uber Techs., Inc., 551 F. Supp. 3d 341, 362–63 (S.D.N.Y. 2021)

(finding that an employer was not on notice that a specific employee had a propensity for sexual

assault even though it received thousands of reports of sexual assault by its employees).

The Amended Complaint does not identify any instances where Cunningham engaged in similar inappropriate conduct or was accused of such conduct, much less that the Brooklyn Diocese knew of such conduct. The Amended Complaint includes no factual basis for its conclusory allegations, which are legally insufficient to state a claim for negligent hiring or supervision. See Murray, 579 F. Supp. 3d at 389 (declining to find the Brooklyn Diocese had sufficient notice of alleged misconduct based on the plaintiff's sparse allegations and "information and belief"); see also Cort v. Marshall's Dep't Store, No. 14-CV-7385 (NGG)(RER), 2015 WL 9582426, at *5 (E.D.N.Y. Dec. 29, 2015) ("A conclusory allegation is not enough to state a claim for negligent hiring, retention, supervision, or training."). The Amended Complaint fails to state a claim for negligent hiring or negligent retention.

Doe v. Abdulaziz Bin Fahd Alsaud is instructive. 12 F. Supp. 674 (S.D.N.Y. 2014). There, an employee of the Saudi crown prince invited the plaintiff and her female friend to accompany him, after a night out, from a lounge in lower Manhattan to his room at the Plaza Hotel. Id. at 676. The employee then drugged plaintiff and sexually assaulted her. Id. The employee was criminally charged, convicted after trial, and sentenced to ten years in prison. Id. Plaintiff sued the crown prince and a Saudi company that employed the bad actor, asserting claims for negligent supervision, negligent retention, and respondeat superior. Id. Light on facts with respect to the bad actor's propensity to commit rape and the defendants' knowledge of that propensity, the plaintiff attempted to rely on conclusory allegations such as "[d]uring the course of his employment, Defendants . . . knew or should have known of [the bad actor's] predisposition for abusing women, his violent propensities, and his status as a sexual predator, yet did nothing to stop it." Id. at 680. The court granted defendants' motion to dismiss because the complaint failed to allege "(i) a single prior act or allegation of sexual misconduct committed

by [the bad actor]; or (ii) a fact suggesting that [the employer] knew or should have known of any such prior acts."  Id.  The absence "of factual allegations concerning [the bad actor's] propensity for sexual assault and [the employer's] knowledge is fatal to Plaintiff's negligence claim and warrants dismissal."  Id.

The court reached a similar conclusion in Ortiz v. Parkchester North Condominiums, 2018 WL 2976011, at *1 (S.D.N.Y. June 13, 2018).  There, the plaintiff was allegedly assaulted by "special patrolmen" of the condominium complex during an arrest.  Id., at *2.  Plaintiff sued those officers and their employer asserting civil rights claims and negligent hiring claims.  Id.  Defendants moved to dismiss the negligent hiring claims.  The court granted defendants' motion because the complaint "contain[ed] no allegations regarding any violent or dishonest propensities or tendencies of [the employees].  Plaintiff does not allege any facts indicating that [the employee] had a violent or criminal history."  Id., at *10.  The court continued: the complaint's "only reference to any propensity for misconduct [by defendants] is that [their employer] 'knew or should have known that the individual Defendants were prone to violence,' and that their employer 'knew or should have known through the exercise of reasonable diligence that [the employees] were dangerous.'"  Id.  Those conclusory allegations, "without any supporting facts, are insufficient to plead a claim for negligent hiring and retention."  Id.

The same is true here.  The Amended Complaint alleges no facts indicating that Cunningham had a violent criminal history or had previous allegations of sexual assault made against him.  The Amended Complaint summarily alleges that "the Diocese and the Parishes knew or should have known that there was an unreasonable risk of harm to children who interacted with Father Cunningham."  (Am. Compl. ¶ 126.)  This generalization without more is insufficient to state a claim because Plaintiff does not demonstrate how the Brooklyn Diocese

should have known about Cunningham's purported propensity yet failed to act. The Amended Complaint pleads no facts indicating that Cunningham had a criminal background or any prior instances of misconduct.

The Amended Complaint also does not allege that the Brooklyn Diocese became aware of Cunningham's propensity to commit sexual assault at the time Plaintiff visited Cunningham at Good Shepherd. The Amended Complaint's allegation that Plaintiff eventually reported the abuse, several months <u>after</u> the incident, does not change the outcome. (Am. Compl. ¶¶ 70–72.) Plaintiff's reporting of the abuse after it occurred does not plausibly suggest that the Brooklyn Diocese knew of Cunningham's propensity to commit sexual assault before it occurred.

**POINT IV**

**THE GROSS NEGLIGENCE CLAIM FAILS BECAUSE**
**THE UNDERLYING NEGLIGENCE CLAIMS FAIL**

The Court's December 4, 2024 text order asked the Brooklyn Diocese to consider "why plaintiff's allegations regarding the specific nature of the duties [the Brooklyn Diocese] owed to plaintiff, beyond the mere fact of the individual defendants employment, are not sufficient to state a claim for gross negligence."[7] As set forth in Section II.C <u>supra</u>, the Brooklyn Diocese does not concede that it employed Cunningham, but, even if the Court accepts that allegation, the gross negligence claim fails because it relies on the same alleged duties and breaches as the legally infirm negligence claims. (Am. Compl. ¶¶ 145–57.) Like negligence, a gross negligence claim requires "the commission or omission of an act or duty owing by one to another." <u>Curley v. AMR Corp.</u>, 153 F.3d 5, 13 (2d Cir. 1998). The Amended Complaint fails to plead any duty that the Brooklyn Diocese owed Plaintiff or any breach of that duty. Where, as here, "a claim for

---

[7] The text order's first point regarding the factual basis of Plaintiff's IIED claim is addressed <u>infra</u> in Section V. After careful consideration of the Court's third point in the text order regarding "why Rule 8 is not satisfied," the Brooklyn Diocese has not advanced this argument in its motion to dismiss.

ordinary negligence fails, a gross negligence claim necessarily fails." Pasternack v. Lab. Corp. of Am., 892 F. Supp. 2d 540, 552 (S.D.N.Y. 2012); see also Murray, 579 F. Supp. 3d at 390.

Further, gross negligence requires conduct "of an 'aggravated character' that 'evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing.'" LaFrantz v. St. Mary's Roman Cath. Church, No. 21-CV-04920 (NGG)(CLP), 2024 WL 216718, at *5 (E.D.N.Y. Jan. 19, 2024) (quoting Curley, 153 F.3d at 13); cf. Guerriero v. Diocese of Brooklyn, No. 21-CV-4923 (MKB), 2024 WL 2826097, at *10 (E.D.N.Y. Mar. 28, 2024), reconsideration denied, No. 21-CV-4923 (MKB), 2024 WL 2826101 (E.D.N.Y. May 22, 2024) (declining to dismiss gross negligence claim where plaintiff had sufficiently alleged "Defendants' employees knew or should have known of Father[]'s propensity for sexual abuse but allowed him to spend time alone with Plaintiff multiple times a week for nearly seven years").

Here, Plaintiff has failed to demonstrate gross negligence where there are no facts alleging that it was improper or abnormal for Plaintiff to visit Cunningham's living quarters and no facts alleging Cunningham had a history of inappropriate conduct. Accordingly, Plaintiff's gross negligence claim should be dismissed. See LaFrantz, 2024 WL 216718, at *5 (dismissing the plaintiff's gross negligence claim on substantially similar facts because the allegations did "not rise to the level of deliberate indifference").

## POINT V

## THE IIED CLAIM ALSO FAILS BECAUSE IT IS TIME-BARRED

Plaintiff's IIED claim (Count VII) also fails as a matter of law.

First, the only intentional action alleged to have been taken by the Brooklyn Diocese— summoning Plaintiff to a meeting with Diocesan representatives in February 1997—is time-barred under the Adult Survivors Act ("ASA"). Both the plain language of the ASA and established New York caselaw have limited IIED claims to criminal actions as defined under

New York criminal statutes. The meeting with Diocesan representatives in February 1997, however, does not involve any criminal conduct and therefore does not fall under the suspension of statute of limitations allowed by the ASA. (Am. Compl. ¶¶ 72–73).

Second, the Court's December 4, 2024 text order asked the Brooklyn Diocese to consider "why the facts alleged in the Amended Complaint regarding the February 1997 meeting between Plaintiff and Fr. Cunningham and Fr. Frost do not provide an adequate factual basis to state a claim of [IIED]." As set forth below, the factual allegation that Plaintiff was called into a meeting to confront the accused does not rise to the level of conduct so extreme and outrageous as to be utterly intolerable in a civilized society as required for an IIED claim under New York law. See Moraes v. White, 571 F. Supp. 3d 77, 104 (S.D.N.Y. 2021).

A.      **The ASA Does Not Apply Because the Meeting Was Distinct from Sexual Violations as Defined under Article 130 of the New York Penal Law**

In New York, claim revival statutes like the ASA must be "narrowly construed." Levin v. Sarah Lawrence College, -- F. Supp. 3d --, 2024 WL 4026966, at *9 (S.D.N.Y. 2024) (quoting In re Agent Orange Prod. Liab. Litig., 597 F. Supp. 740, 815 (E.D.N.Y. 1984), aff'd, 818 F.2d 145 (2d Cir. 1987)). While the goal of statutory interpretation is to "ascertain and give effect to the intention of the Legislature," the starting point of interpretation "must always be the language itself, giving effect to the plain meaning." Id.

The text of the ASA provides that:

> Notwithstanding any provision of law which imposes a period of limitation to the contrary[,] . . . every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against such person who was eighteen years of age or older . . . which is barred as of the effective date of this section because the applicable period of limitation has expired[,] . . . is hereby revived, and action thereon may be commenced not

earlier than six months after, and not later than one year and six
months after the effective date of this section.

N.Y.C.P.L.R.§ 214-j (emphasis added).  The plain meaning of the statute clearly outlines the

scope of revivable causes of actions is limited to actions "constitut[ing] a sexual offense as

defined" in Article 130 of the New York Penal Law.  Under Article 130, even the least severe

sexual offense is defined to include some form of physical contact.  See Penal Law § 130.52

(least severe crime is "third-degree sexual abuse" or forcible touching).

Beyond the textual interpretation, New York courts have consistently upheld the plain

reading of the statute, affirming that the "conduct" in question must itself be a "sexual offense."

Doe v. Doe, 83 Misc.3d 408, 411, 213 N.Y.S.3d 875, 878 (N.Y. Sup. Ct., N.Y. Cnty. 2024).  For

example, in Levin, the SDNY dismissed the plaintiffs' IIED claims under the ASA, reasoning

that even if the plaintiffs were forced to witness another person's sexual assault, forced to engage

in manual labor, and deprived of sleep and proper nutrition by a person residing in the college

dorm, they "did not identify any sex offense within Article 130 that [was] violated." Levin, 2024

WL 4026966, at *13; see also id., at *10 ("The ASA revives only those claims that seek relief

from an injury caused by conduct that constitutes a predicate sexual offense under Article 130 of

the Penal Law.").  Similarly, in Reid v. McKelvey, the Southern District of New York agreed

that although the ASA applies to a broader set of causes of action than the assault itself, the

ultimate injury alleged "must be 'the result of a sexual offense.'" Reid v. McKelvey, 2024 WL

4345585, at *4 (S.D.N.Y. Sept. 30, 2024).  The court subsequently denied the plaintiff's IIED

claims because her alleged injuries from defamation following a rape accusation were "distinct"

from injuries resulting from an Article 130 sexual offense.  Id.

Similar to Levin and Reid, Plaintiff's February 1997 meeting was a distinct event from

Plaintiff's sexual abuse allegation.  Plaintiff alleged that he was "forced" to attend a meeting

with Diocesan representatives—months after the singular incident occurred—where both Cunningham and Frost were present.  (Am. Compl. ¶¶ 17, 72.)  While Plaintiff was allegedly asked to "recount in detail the sexual abuse he had suffered" and listen to the Fathers' denials, the meeting itself does not involve any physical action as required under Article 130.  (Id. ¶ 73.) Plaintiff's use of terms such as "re-victimization" (id. ¶¶ 1, 18, 78, 80) and "additional trauma" (id. ¶ 74) in the complaint further suggests that he also perceived the meeting as a "distinct" event from the underlying alleged abuse.  However, without a defined sexual violation occurring during the meeting, the ASA does not revive the IIED claim.

**B.** **The Factual Allegations Themselves Do Not Involve Forms of Outrageous Conduct Recognized by New York Courts**

Plaintiff also fails to satisfy the "rigorous" requirement of demonstrating "extreme and outrageous conduct" sufficient for his IIED claim to survive a motion to dismiss.  A legally sufficient IIED claim requires: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and the injury; and (iv) severe emotional distress."  Chanko v. Am. Broadcasting Cos. Inc., 27 N.Y. 3d 46, 56 (2016)).  IIED is a "highly disfavored [tort] under New York law" and are frequently dismissed on pre-answer motions.  Blanco v. Success Acad. Charter Sch., Inc., 722 F. Supp. 3d 187, 216 (S.D.N.Y. 2024) (quoting Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 158 (2d Cir. 2014)).  "The conduct alleged must be 'so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" Id. (quoting Martin v. Citibank, N.A., 762 F.2d 212, 220 (2d Cir. 1985)).

Plaintiff's sole factual allegation that he was called into one meeting to confront his accused perpetrators does not rise to the level of conduct so extreme and outrageous as to be

utterly intolerable in a civilized society as required to satisfy the "rigorous" standard of extreme and outrageous conduct for an IIED claim under New York law.  Therefore, the IIED claim (Count VII) should be dismissed.

## POINT VI

### <u>THE BREACH OF FIDUCIARY DUTY CLAIM ALSO FAILS</u>

The breach of fiduciary duty claim (Count IX) fails because the Amended Complaint does not allege facts sufficient to show that Plaintiff was in a relationship of trust with the Brooklyn Diocese such that it had a duty to act for or give advice to him, and there is no fiduciary relationship writ large between the Brooklyn Diocese and its parishioners.  Under New York law, a breach of fiduciary duty claim requires "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom."  <u>Guerriero</u>, 2024 WL 2826097, at *11 (quoting <u>Spinelli v. Nat'l Football League</u>, 903 F.3d 185, 207 (2d Cir. 2018)).

For a parishioner plaintiff to establish the existence of a fiduciary relationship with an institutional church, the plaintiff "may not merely rely on the church's status in general, but must come forward with facts demonstrating that his or her relationship with the institution was somehow unique or distinct from the institution's relationship with other parishioners generally." <u>Guerriero</u>, 2024 WL 2826097, at *11 (quoting <u>LaFrantz</u>, 2024 WL 216718, at *6); <u>see also</u> <u>Doe v. Roman Cath. Diocese of Rochester</u>, 12 N.Y.3d 764, 765–66 (2009) ("[I]n order to demonstrate the existence of a fiduciary duty between a cleric and a congregant . . . a congregant must set forth facts and circumstances in the complaint demonstrating that the congregant became uniquely vulnerable and incapable of self-protection regarding the matter at issue.") (citation omitted); <u>Doe v. Holy See (State of Vatican City)</u>, 17 A.D.3d 793, 795 (3d Dep't 2005); <u>Bouchard v. N.Y. Archdiocese</u>, 2006 WL 1375232, at *6 (S.D.N.Y. May 18, 2006) (a plaintiff must "make sufficient allegations to support the existence of . . . a [fiduciary] relationship

between Plaintiff and the Church Defendants" and the "general relationship between a church or religious body and a congregant . . . is insufficient in law to support the finding of a fiduciary duty"); J.D. v. Roman Catholic Diocese of Brooklyn, 203 A.D.3d 880, 882, 161 N.Y.S.3d 786, 788 (2d Dep't 2022) ("the amended complaint did not allege facts that would give rise to a fiduciary relationship between the plaintiff and the defendants" because it did not "allege facts that demonstrated that the plaintiff's relationship with the defendants was somehow unique or distinct from the defendants' relationships with other parishioners generally").

The Amended Complaint's allegations concerning Plaintiff's relationship with the Brooklyn Diocese are precisely the kind of general allegations that courts regularly find insufficient to demonstrate a fiduciary relationship. See Guerriero, 2024 WL 2826097, at *11 (finding allegations that the plaintiff attended the defendants' school and participated as an altar boy in the defendants' church were insufficient to establish a fiduciary relationship); LaFrantz, 2024 WL 216718, at *6 (same); see also PC-4 Doe v. Archdiocese of N.Y., 2021 WL 2719337, at *3 (N.Y. Sup. Ct., N.Y. Cnty. July 1, 2021) (finding allegations the defendant held "itself out as [] being able to provide a safe and secure environment for children" and its "position as a caretaker" insufficient to demonstrate fiduciary relationship); Mars v. Diocese of Rochester, 196 Misc. 2d 349, 351, 763 N.Y.S.2d 885, 888 (N.Y. Sup. Ct., N.Y. Cnty. 2003) (allegations that defendant "had knowledge of [the alleged perpetrators] prior history of . . . sexual abuse" and "concealed this knowledge from plaintiffs" insufficient to allege fiduciary relationship). The Amended Complaint asserts that Plaintiff was in a special relationship with the "Defendants" by nature of his mother's employment with St. Raphael Parish. (Am. Compl. ¶¶ 115–16.) The Amended Complaint also relies on the fact that Plaintiff was afforded free tuition to continue attending parochial school after his father unexpectedly passed away. (Id. ¶ 174.) What is

absent from the Amended Complaint, however, is any allegation explaining how Plaintiff's relationship with the Brooklyn Diocese "was unique in any way or different than any other parishioner practicing their faith." John SZ v. Archdiocese of N.Y., 2021 NY Slip Op 32490(U), *5 (Sup. Ct., N.Y. Cnty. Oct. 26, 2021); see also Guerriero, 2024 WL 2826097, at *11; LaFrantz, 2024 WL 216718, at *6.  Plaintiff attempted to do so by utilizing the word "unique" with respect to his attendance at masses, his work as an altar boy and in the rectory of the parish, but none of these acts is any different from any other parishioner practicing their faith.  (Am. Compl. ¶ 176.) The Amended Complaint therefore fails to allege a fiduciary relationship between Plaintiff and the Brooklyn Diocese.  The breach of fiduciary duty claim must be dismissed.

## **CONCLUSION**

For the reasons set forth above, the Brooklyn Diocese respectfully requests that the Court dismiss the Amended Complaint as against it with prejudice.

Dated: February 3, 2025
New York, New York

Respectfully submitted,

KELLEY DRYE & WARREN LLP

By: _____
Michael C. Lynch
Randall L. Morrison, Jr.
Neil Merkl
Hanna K. Feldman
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel: (212) 808-7800
Fax: (212) 808-7897
mlynch@kelleydrye.com
rmorrison@kelleydrye.com
nmerkl@kelleydrye.com
hfeldman@kelleydrye.com
*Attorneys for Defendant*
*The Brooklyn Diocese*

## <u>WORD COUNT CERTIFICATION</u>

Pursuant to Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I certify that The Brooklyn Diocese's Memorandum of Law in Support of Its Motion to Dismiss Amended Complaint contains 6,737 words, excluding the caption, table of contents, table of authorities, and signature block. This certification was prepared in reliance on the word-count function of the word processing system (Microsoft Word) used to prepare the document.

Dated: New York, New York
      February 3, 2025

KELLEY DRYE & WARREN LLP

By: _____
      Michael C. Lynch
      Randall L. Morrison, Jr.
      Neil Merkl
      Hanna K. Feldman
      3 World Trade Center
      175 Greenwich Street
      New York, NY 10007
      Tel: (212) 808-7800
      Fax: (212) 808-7897
      mlynch@kelleydrye.com
      rmorrison@kelleydrye.com
      nmerkl@kelleydrye.com
      hfeldman@kelleydrye.com

      *Attorneys for Defendant*
      *The Brooklyn Diocese*