UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

—————————————————————————— X

ROBERT P. LYNCH,

                                                    Index No.: 23-cv-4800 (NRM) (LKE)

                        Plaintiff,

                -against-

ROMAN CATHOLIC DIOCESE OF
BROOKLYN, ST. RAPHAEL CATHOLIC
PARISH, GOOD SHEPHERD PARISH, and
FATHER JAMES K. CUNNINGHAM,

                        Defendants.

—————————————————————————— X


**<u>PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO MOTIONS TO DISMISS</u>**



                                        MOSKOWITZ, COLSON
                                        GINSBERG & SCHULMAN, LLP
                                        80 Broad Street, Suite 1900
                                        New York, New York 10004

                                        *Attorneys for Plaintiff*
                                        *Robert P. Lynch*

# **TABLE OF CONTENTS**

Preliminary Statement and Facts ................................................................................. 1

Argument ...................................................................................................................... 4

   I.   The Amended Complaint Comports With Rule 8 ............................................... 4

   II.   Plaintiff Alleges Notice in Sufficient Detail .................................................... 6

   III.   Plaintiff Adequately Alleges His Negligence-Based Claims for Relief ........................... 9

   A.  The Moving Defendants Owed Plaintiff a Duty to Protect Him from Their Employee's Known Dangerous Propensities ....................................................................... 10

   B.  The Moving Defendants Owed Plaintiff a Duty as Landowners ..................................... 13

   C.  Moving Defendants Owed Plaintiff a Fiduciary Duty Because of Their Unique Relationship with Him ....................................................................... 15

   IV.  Plaintiff Adequately Alleges Gross Negligence .............................................. 16

   V.   Plaintiff's Claims for Infliction of Emotional Distress are Not Time-Barred and are Adequately Pleaded ....................................................................... 17

   VI.  Plaintiff's Claim for Breach of Fiduciary Duty is Not Impermissibly Duplicative of His Negligence Claim ....................................................................... 19

Conclusion ................................................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................ 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................... 5

*Bernheim v. Litt,* 79 F.3d 318 (2d Cir.1996) .................................................................... 5

*Blanco v. Success Acad. Charter Sch., Inc.*, 722 F. Supp. 3d 187 (S.D.N.Y. 2024) ................... 18

*Bouchard v. New York Archdiocese*, 719 F. Supp. 2d 255 (S.D.N.Y. 2010) ............................ 12

*Bouchard v. New York Archdiocese*, No. 04 CIV. 9978 (CSH),
   2006 WL 1375232 (S.D.N.Y. May 18, 2006) .................................................. 6, 7, 9

*Bumpus v. New York City Transit Auth.*, 851 N.Y.S.2d 591
   (N.Y. App. Div. 2d Dep't 2008) ....................................................................... 12

*C.Q. v. Est. of Rockefeller*, No. 20-CV-2205, 2021 WL 4942802
   (S.D.N.Y. Oct. 21, 2021) ............................................................................. 5, 13

*Caroleo v. The Roman Catholic Diocese of Brooklyn*, No. 519979/2019,
   2021 NY Slip Op. 31445(U), 2021 WL 1667172 (N.Y. Sup. Ct. Apr. 28, 2021) ................... 13

*Costello v. Flatman*, LLC, 558 F.App'x 59 (2d Cir. 2014) ................................................ 14

*Curtis v. Gates Cmty. Chapel of Rochester, Inc.*, No. 20-CV-06208 (EAW),
   2023 WL 1070650 (W.D.N.Y. Jan. 27, 2023) .......................................................... 9

*Di Ponzio v. Riordan*, 89 N.Y.2d 578 (1997) ................................................................ 13

*DiGiorgio v. Roman Catholic Diocese of Brooklyn*, No. 520009/2019,
   2021 WL 1578326 (N.Y. Sup Ct. Apr. 22, 2021) ..................................................... 16

*Dixon v. Reid*, 744 F. Supp. 3d 323 (S.D.N.Y. 2024) ....................................................... 18

*Doe v. Abdulaziz Bin Fahd Alsaud*, 12 F. Supp. 3d 674 (S.D.N.Y. 2014) ................................. 8

*Doe v. Holy See (State of Vatican City)*, 793 N.Y.S.2d 565
   (N.Y. App. Div. 3d Dep't 2005) ...................................................................... 15

*Ehrens v. Lutheran Church*, 385 F.3d 232 (2d Cir. 2004) ............................................ 8, 10

*Env't Servs., Inc. v. Recycle Green Servs., Inc.*, 7 F. Supp. 3d 260 (E.D.N.Y. 2014) ................. 14

*Gargano v. Diocese of Rockville Ctr.*, 888 F. Supp. 1274 (E.D.N.Y. 1995) .............................. 13

*Guerriero v. Diocese of Brooklyn*, No. 21-CV-4923 (MKB),
   2024 WL 2826097 (E.D.N.Y. Mar. 28, 2024) ......................................................... 13

*Guerriero v. Diocese of Brooklyn*, No. 21-CV-4923 (MKB),
   2024 WL 2826101 (E.D.N.Y. May 22, 2024) .......................................................... 15

*Howell v. N.Y. Post Co.*, 81 N.Y.2d 115 (1993) .............................................................. 18

*Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64 (2d Cir. 2014) ............................................. 5

*Kenneth R. v. Roman Catholic Diocese of Brooklyn*, 654 N.Y.S.2d 791
   (N.Y. App. Div. 2d Dep't 1997) ...................................................................... 12

*Koch v. Christie's Int'l PLC*, 699 F.3d 141 (2d Cir. 2012) ................................................. 5

*L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419 (2d Cir. 2011) ......................................... 5

*LaFrantz v. St. Mary's Roman Cath. Church*, No. 21-CV-4920,
   2024 WL 216718 (E.D.N.Y. Jan. 19, 2024) ................................................. 6, 13, 14, 16

*Lazarre v. Gragston,* 164 A.D.3d 574 (N.Y. App. Div. 2d Dep't 2018) ................................... 7

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006) .................................................... 9

*Maliakel v. Morio,* 185 A.D.3d 1018 (N.Y. App. Div. 2d Dep't 2020) ................................... 6

*Marasligiller v. City of New York*, 217 F. App'x 55 (2d Cir. 2007) ...................................... 13

*Marmelstein v. Kehillat New Hempstead*, 11 N.Y.3d 15 (2008) ........................................... 15

*Murray v. Nazareth Reg'l High Sch.*, 579 F. Supp. 3d 383 (E.D.N.Y. 2021) ............................. 8

ii

*O'Rear v. Diaz*, No. 24 Civ. 1669, 2025 WL 283169 (S.D.N.Y. Jan. 23, 2025) ........................ 11

*O'Reilly v. Executone of Albany, Inc.*, 121 A.D.2d 772 (N.Y. App. Div. 3d Dep't 1986)........... 10

*Ortiz v. Parkchester North Condominiums*, No. 16-CV-9646,
2018 WL 2976011 (S.D.N.Y. June 13, 2018) ......................................................... 8

*Pina v. Henderson*, 752 F.2d 47 (2d Cir. 1985)............................................................... 14

*Polomie v. Golub Corp.*, 640 N.Y.S.2d 700 (N.Y. App. Div. 3d Dep't 1996)............................ 13

*Ranta v. City of New York*, 481 F. Supp. 3d 115 (E.D.N.Y. 2020)............................................. 19

*Rodriguez–Garcia v. Bobby's Bus Co., Inc.,* 175 A.D.3d 631
(N.Y. App. Div. 2d Dep't 2019) ......................................................................... 7

*Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007)................................................................. 14

*Tabriz v. P.G.K. Luncheonette, Inc.*, 124 A.D.3d 626 (N.Y. App. Div. 2d Dep't 2015) ............. 14

*Vione v. Tewell*, 820 N.Y.S.2d 682 (N.Y. Sup. Ct. 2006) ............................................. 12

*Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp. 2d 317 (E.D.N.Y. 2012).................. 12

**Other Authorities**

Black's Law Dictionary 1289 (12th ed. 2024) ............................................................ 11

Diocese of Brooklyn, "Parish Directory" ................................................................ 15

## PRELIMINARY STATEMENT AND FACTS

Plaintiff Robert P. Lynch ("Plaintiff" or "Mr. Lynch") respectfully submits this
Memorandum of Law in opposition to the Motions by Defendants Roman Catholic Diocese of
Brooklyn (the "Diocese) and by St. Raphael Catholic Parish ("St. Raphael") and Good Shepherd
Parish ("Good Shepherd"; together with St. Raphael, the "Parish Defendants"; collectively with
the Diocese, the "Moving Defendants") seeking dismissal of the Amended Complaint ("Am.
Compl.").[1]

A priest named Father James Frost, while employed by the Diocese and St. Raphael,
sexually assaulted Plaintiff more than seventy-five times while Plaintiff was between sixteen and
eighteen years old. (Am. Compl. ¶¶ 45-47.) Shortly thereafter, Defendant James K.
Cunningham, a Catholic priest employed by Good Shepherd and the Diocese, attempted to rape
Mr. Lynch inside the confines of Cunningham's room on Good Shepherd's premises. (Am.
Compl. ¶¶ 64-68.)

The abuse Frost inflicted is the subject of the separate, related litigation. (Am. Compl. ¶¶
24-25.) This case, brought pursuant to the New York Adult Survivors Act, codified at CPLR §
214-J, seeks recovery for Cunningham's attempt to rape Mr. Lynch, and for the Moving
Defendants' outrageous and tortious conduct in facilitating and acquiescing in Cunningham's
criminal sexual assault.

From first through eighth grade, Mr. Lynch attended the St. Raphael School, operated by
the Diocese and St. Raphael Parish. (Am. Compl. ¶ 38.) In ninth grade, he entered the Cathedral
Preparatory School and Seminary ("Cathedral Prep."), a high school operated by the Diocese,

---

[1] Individual defendant Father James K. Cunningham filed and Answer to the Amended
Complaint and has not moved to dismiss.

with the intention of becoming a priest and devoting his adult life to the Roman Catholic Church. (Am. Comp. ¶¶ 38.)

Plaintiff's father died suddenly when Plaintiff was fifteen years old, leaving the Lynch family in a dire financial situation. (Am. Compl. ¶¶ 3, 39.) No longer able to afford Mr. Lynch's high school tuition payments, Mr. Lynch's mother contacted Bishop Catanello, the principal of the diocesan high school Mr. Lynch attended, to withdraw him from the school. (*Id.*). As a supposed act of kindness, Bishop Catanello allowed Mr. Lynch to continue attending the school free of charge. (*Id.*) Feeling deeply indebted to the school and the Diocese, Mr. Lynch thereafter became more involved at St. Raphael and began working there as an assistant in the rectory and performing other chores throughout St. Raphael's grounds. (Am. Compl. ¶¶ 4-5.) He also worked in St. Raphael's rectory as Frost's assistant after school hours and on the weekends. (Am. Compl. ¶¶ 43-44.)

During this time, Frost took advantage of Plaintiff's vulnerability while pretending to act as a father figure to him. (Am. Compl. ¶ 6.)

The Diocese had no functional policy or oversight to prevent a priest from being alone with a minor or young adult or from engaging in sexual abuse. (Am. Compl. ¶ 58.) Instead of protecting the children and adolescents entrusted to its care, the Diocese instead focused its efforts on protecting sexually predatory priests by transferring them between and among postings. (Am. Compl. ¶ 58.)

In 1992, when Mr. Lynch was sixteen, Frost began to abuse him sexually. (Am. Compl. ¶¶ 7, 45.) After Frost sexually abused Mr. Lynch for two years, leaving him vulnerable to abuse by others, Defendants passed Mr. Lynch off to Cunningham. (Am. Compl. ¶¶ 8, 63.) Cunningham was a Roman Catholic cleric employed by the Diocese, which hired him,

supervised and controlled him, paid him a salary, and gave him living accommodations at Good Shepherd. (Am. Compl. ¶¶ 9-11.) Despite knowing that Cunningham had a propensity to engage in sexual misconduct, particularly against vulnerable minors, the Diocese and Good Shepherd placed Cunningham in positions where he worked with, and had unsupervised access to, minors as an integral part of his work. (Am. Compl. ¶¶ 12-13.) What Plaintiff initially believed was a normal mentoring relationship was in fact a relationship designed to permit Cunningham to prey upon him. (Am. Compl. ¶ 65.) As a result, Cunningham was able to interact with Plaintiff, whom he groomed by pretending to act as a father figure and confidant before committing egregious sexual, physical, and mental abuse against him. (Am. Compl. ¶ 14.) In the fall of 1996, Cunningham arranged to be alone with Mr. Lynch in Cunningham's room at Good Shepherd and attempted to rape him. (Am. Compl. ¶¶ 66-67.) Mr. Lynch struggled against Cunningham and was eventually able to kick Cunningham in the groin and escape. (Am. Compl. ¶ 68.)

Mr. Lynch reported Cunningham's attempt to rape him to Auxiliary Bishop Catanello, who was a Diocesan official and former principal at Cathedral Prep. (Am. Compl. ¶ 70.) Rather than assist the distressed victim of the attack, the Diocese ordered Mr. Lynch to attend a meeting at which he was forced to confront his abusers, Frost and Cunningham, without the presence of a counselor, legal representative, or support person. (Am. Compl. ¶ 17.) The meeting was purportedly intended to give him an opportunity to describe the horrific instances of abuse he had suffered. In reality, the Diocese structured the meeting in a manner that was intended to intimidate Mr. Lynch, and prevent him from reporting the abuse to the authorities. Mr. Lynch was forced to listen to his abusers' lies and denials while senior representatives of the Diocese and the Parish Defendants defended the accused priests and demeaned Mr. Lynch. (Am. Compl.

¶¶ 17, 73.)  Although not alleged in the Amended Complaint, Plaintiff has learned through discovery that Cunningham was interviewed by Diocesan authorities around the time of this confrontation and admitted having "wrestled" with Plaintiff in his room and having pinned Plaintiff to his bed.

Despite this admission, Moving Defendants did nothing to prevent Cunningham from continuing to serve as a priest or otherwise to protect other vulnerable persons from his predations.  Cunningham remains a priest in good standing in the Diocese.  (Am. Compl. ¶ 75.)

Mr. Lynch, by contrast, has suffered in his personal life and his career throughout his adult life as a result of the abuse he suffered at the hands of Defendants and Frost.  He lost his faith, stopped going to church, and abandoned his plans to become a priest, instead becoming a police officer.  (Am. Compl. ¶¶ 79-80.)  He continues to suffer with intimacy as a result of the abuse he suffered, leading to problems in his marriage, and the lingering effects of the sexual assaults perpetrated by Frost and Cunningham, with the assistance and acquiescence of the Moving Defendants, have prevented Mr. Lynch from achieving success in his chosen career. (Am. Compl. ¶¶ 82-84.)

## ARGUMENT

### I.     The Amended Complaint Comports With Rule 8

At Point I of each of their respective briefs, Moving Defendants argue that Plaintiff's claims are "implausible" under *Iqbal* and *Twombly*, and that the Amended Complaint must be dismissed for failure to meet the pleading standard of Rule 8.  They are wrong.  The Amended Complaint asserts more than sufficient plausible facts to support each of Plaintiff's claims for relief.

Under Rule 8, to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *C.Q. v. Est. of Rockefeller*, No. 20-CV-2205, 2021 WL 4942802, at *2 (S.D.N.Y. Oct. 21, 2021) (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011)). A complaint is properly dismissed as "implausible" only if, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. 544, 558 (2007). For the purpose of resolving the motion to dismiss, the Court must assume all well-pled facts to be true, drawing all reasonable inferences in favor of the plaintiff. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). "The review of [a 12(b)(6)] motion is limited, and the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal." *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996) (internal citations and quotation marks omitted). To survive dismissal, a complaint "does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014).

The Court should reject the Moving Defendants' argument that the Amended Complaint fails to allege plausible facts sufficient to give notice of the basis of Plaintiff's claims. Plaintiff alleges that Cunningham—a priest employed by the Moving Defendants and known by them to

be a sexual predator—attempted to rape him on Good Shepherd's premises, and that the Diocese and the Parish Defendants retaliated against Plaintiff when he reported the crimes Frost and Cunningham committed and to which the Diocese and Parish Defendants had acquiesced. Under the standards applicable to a Rule 12 motion to dismiss, those allegations are more than sufficient to assert plausible claims against the Parish and dismissal should be denied. *See LaFrantz v. St. Mary's Roman Cath. Church*, No. 21-CV-4920, 2024 WL 216718, at *3 (E.D.N.Y. Jan. 19, 2024) (finding allegations sufficient under Rule 8 and denying dismissal where complaint alleged that priest was employed by the Diocese and a parish church and was "under [d]efendants' direct supervision, employ, and control when he committed the wrongful acts").

## II. Plaintiff Alleges Notice in Sufficient Detail

The Amended Complaint alleges that the Moving Defendants had actual notice that Cunningham had a propensity to commit sexual violence against minors and vulnerable young people. Nothing more is required. *See Bouchard v. New York Archdiocese*, No. 04 CIV. 9978 (CSH), 2006 WL 1375232, at *5 (S.D.N.Y. May 18, 2006) (denying motion to dismiss and allowing discovery to proceed because "Plaintiff does allege in the Amended Complaint that the Church Defendants knew or should have known of the abusive propensities of [the accused priest], but still hired him or failed to supervise him or warn others with whom he might have contact").

Under New York law, a party opposing a motion to dismiss or a motion for summary judgment on the pleadings may obtain discovery if there is a non-speculative basis to believe that discovery will reveal additional relevant facts, within the control of the moving party, that would tend to support the non-movant. *See*, *e.g.*, *Maliakel v. Morio,* 185 A.D.3d 1018, 1019 (N.Y. App. Div. 2d Dep't 2020); *Rodriguez–Garcia v. Bobby's Bus Co., Inc.,* 175 A.D.3d 631, 632 (N.Y.

App. Div. 2d Dep't 2019); and *Lazarre v. Gragston,* 164 A.D.3d 574, 575 (N.Y. App. Div. 2d Dep't 2018).

"Where factual issues are decisive, it is generally considered preferable for the parties to complete discovery-depose every witness, produce every document-before one party or the other moves for summary judgment." *Bouchard*, 2006 WL 1375232, at *9. "Where, as here, the probative evidence is almost exclusively in the possession of the moving party, giving the non-moving party a full opportunity to conduct discovery is an exercise in simple fairness." *Id.*

Here, the facts concerning whether anyone reported that Cunningham was a sexual predator before he attacked Plaintiff are exclusively within the Diocese' s control. Moreover, it is far from speculative that discovery likely will reveal additional facts demonstrating that the Moving Defendants had actual notice of Cunningham's dangerous proclivities, and that Plaintiff was not Cunningham's first victim. Discovery in this case and in parallel litigation, though not completed, already has established a reasonable basis to conclude that Cunningham is a sexual predator and that his employers are, and at all relevant times were, well-aware of that fact. For example, Monsignor Otto Garcia, the Diocesan official who was tasked with carrying out internal investigations in response to accusations of sexual abuse by priests in the Brooklyn Diocese, testified under oath at a deposition in connection with litigation in the New York Supreme Court for the County of Kings that the Diocese had asked him to investigate allegations against Cunningham. Exactly what those allegations entailed or what his investigation revealed is not yet known but is expected to be the subject of further deposition testimony at a later date. Furthermore, although document discovery in this case remains ongoing and the Diocese's production is not yet complete, the document discovery produced to date indicates that Cunningham underwent some form of treatment at the St. John Vianney Center, a behavioral

health facility in Downingtown, Pennsylvania, where the Roman Catholic Church sent priests accused of sexually abusing or raping children for evaluation and treatment.[2]

Tellingly, the Diocese's argument that Plaintiff has failed adequately to allege notice relies primarily on summary judgment cases. *See*, *e.g.*, *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (approving district court's grant of summary judgment where notice was not established through discovery). The motion to dismiss cases that the Diocese cites are cases in which Plaintiff failed to allege notice of the relevant dangerous condition in any manner, or where the allegations were facially implausible. For example, the Diocese relies on *Doe v. Abdulaziz Bin Fahd Alsaud*, 12 F. Supp. 3d 674 (S.D.N.Y. 2014) ) and *Ortiz v. Parkchester North Condominiums*, No. 16-CV-9646, 2018 WL 2976011 (S.D.N.Y. June 13, 2018), neither of which supports the Diocese's argument that Plaintiff's allegations concerning notice are insufficient at the pleading stage. In *Alsaud*, the plaintiff failed to "allege (i) a single prior act or allegation of sexual misconduct committed by [the employee]; or (ii) a fact suggesting that [the employer] knew or should have known of any such prior acts." *Alsaud*, 12 F.Supp.3d at 680. Similarly, in *Ortiz*, the plaintiff alleged no facts whatsoever to suggest either that the individual defendants had a violent or criminal history or that their employer knew of that history, instead merely reciting that the employer "knew or should have known that the individual [d]efendants were prone to violence." *Ortiz*, 2018 WL 2976011 at *10. In *Murray v. Nazareth Reg'l High Sch.*, 579 F. Supp. 3d 383, 389 (E.D.N.Y. 2021), also cited by the Diocese, the plaintiff alleged that the defendant priest had been transferred between assignments several times, which the court found did not plausibly suggest that the priest was a sex offender.

---

[2] Plaintiff respectfully requests that he be granted leave to amend in order to amplify his allegations concerning notice by alleging these and other facts should the Court find that the Amended Complaint's allegations are insufficient.

Here, by contrast, Plaintiff has alleged with particularity that the Moving Defendants knew Cunningham to be a sexual predator with a predilection towards abusing minors and vulnerable young people. Additional allegations supporting notice are discussed above. Even without those additional facts, nothing more than the particularized allegation set forth in the Complaint is required at the pleading stage, and Plaintiff should be permitted through discovery to develop additional facts showing that the Moving Defendants had actual or constructive notice of the danger Cunningham posed to Plaintiff and other young people they entrusted to Cunningham's care. *Bouchard*, 2006 WL 1375232, at *5-*9.

### III.  <u>Plaintiff Adequately Alleges His Negligence-Based Claims for Relief</u>

"To establish a prima facie case of negligence under New York law, 'a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom.'" *Curtis v. Gates Cmty. Chapel of Rochester, Inc.*, No. 20-CV-06208 (EAW), 2023 WL 1070650, at *2 (W.D.N.Y. Jan. 27, 2023) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006)).

Mr. Lynch adequately alleges that the Diocese and Parish Defendants owed him duties of care for several reasons: (1) Mr. Lynch and Cunningham were employees of the Moving Defendants, who therefore owed Mr. Lynch a duty to protect him against Cunningham's known dangerous proclivities; (2) as landowners, the Moving Defendants owed Plaintiff, an invitee to their premises, a duty to maintain safe premises and prevent foreseeable harm; (3) Mr. Lynch was a student at a school operated by the Diocese, and his activities at the Parish after school hours were in furtherance of his education, giving rise to a duty of care *in loco parentis*; and (4) Mr. Lynch's special relationship of trust with the Moving Defendants gave rise to a fiduciary duty beyond that owed to a typical parishioner.

First, Plaintiff alleges that Cunningham was an employee of both the Diocese (which was responsible for overseeing both Cunningham and the Parish Defendants, and which assigned Cunningham to work at the Good Shepherd) and of the Good Shepherd, where Cunningham worked. Plaintiff, as an altar boy and assistant to Frost at St. Raphael, was also an employee of both the Diocese and St. Raphael.

In New York, an employer has a duty to prevent its employee from causing harm when "the employer 'knew or should have known of the employee's propensity for the conduct which caused the injury' prior to the injury's occurrence." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004). Here, Plaintiff alleges that the Moving Defendants were aware that Cunningham had sexually assaulted vulnerable persons in his care while assigned to other churches and parishes within the Diocese. Thus, they owed Plaintiff a duty to protect him from dangers arising out of Cunningham's known propensity to commit sexual assault.

Defendants' argument that employer liability is barred because sexual assault was outside the scope of Cuningham's duties as an employee is premised on a faulty understanding of New York law. In New York, when an employee acts outside the scope of his duties, his employer can be held liable if the employer subsequently ratifies or acquiesces in the employee's acts. This is true even when the act in question is a sexual assault. *See, e.g.*, *O'Reilly v. Executone of Albany, Inc.*, 121 A.D.2d 772, 773–74 (N.Y. App. Div. 3d Dep't 1986) (upholding sexual battery claims against employer who "had knowledge of such battery by virtue of [employee's] complaints but refused to take any corrective or remedial action, thereby acquiescing in said battery").

An employer is liable for an employee's misconduct on the basis of acquiescence when

the employer knows of the misconduct and fails to take prompt corrective action. *Id.*; *see also O'Rear v. Diaz*, No. 24 Civ. 1669, 2025 WL 283169, at *6 (S.D.N.Y. Jan. 23, 2025) (collecting cases but failing to find acquiescence because employer lacked knowledge of assault); Black's Law Dictionary 1289 (12th ed. 2024) (defining "acquiescence" as, *inter alia*, "tacit or passive acceptance; implied consent to an act"). An employer's knowledge can be established either through direct proof of notice or constructively, as when sexual harassment or assault is pervasive in the workplace. *O'Rear*, 2025 WL 283169, at *6. Where the employer's knowledge is shown, the employer bears the burden of demonstrating that it "took immediate and adequate measures to ensure that the alleged offensive behavior would cease." *Id.* (citations omitted).

Here, Plaintiff alleges that the Moving Defendants knew that Cunningham had a propensity to commit sexual assaults against children and vulnerable people in the workplace and that he had actually committed such assaults, while in the Diocese's employment, at other locations. Plaintiff further alleges that the Diocese did nothing to stop Cunningham from continuing to commit sexual crimes during the course of his employment, but that the Diocese instead actively protected Cunningham from the repercussions of his actions. When Mr. Lynch reported that he had been sexually assaulted, the Parish retaliated against Mr. Lynch rather than punish those who had assaulted him. These allegations are sufficient to make out a claim for vicarious liability on the basis of acquiescence at this stage of the proceedings.

Plaintiff also adequately alleges that the Moving Defendants are liable for negligent hiring, supervision, and retention of Cunningham. Under New York law, "[w]here[,as here,] an employer cannot be held vicariously liable for its employee's torts [because they occur outside the scope of his employment], the employer can still be held liable under theories of negligent hiring, negligent retention, and negligent supervision." *Bouchard v. New York Archdiocese*, 719

F. Supp. 2d 255, 260–61 (S.D.N.Y. 2010) (citing *Kenneth R. v. Roman Catholic Diocese of Brooklyn*, 654 N.Y.S.2d 791 (N.Y. App. Div. 2d Dep't 1997)).  "A claim for negligent supervision or retention arises when an employer places an employee in a position to cause foreseeable harm, harm which the injured party most probably would have been spared had the employer taken reasonable care in supervising or retaining the employee." *Vione v. Tewell*, 820 N.Y.S.2d 682, 687 (N.Y.Sup.Ct.2006) ).  Under New York law, plaintiffs bringing a claim for negligent retention or supervision must also allege that the employer "'knew or should have known' of [the employee's] 'propensity for the conduct which caused [their] injury.'" *Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp. 2d 317, 335 (E.D.N.Y. 2012) (quoting *Bumpus v. New York City Transit Auth.*, 851 N.Y.S.2d 591, 591–92 (N.Y. App. Div. 2d Dep't 2008)).

Here, Plaintiff adequately alleges that the Moving Defendants are liable for their own negligence in hiring, supervising, and retaining Cunningham, even if vicarious liability is not available.  As set forth *supra* at Points I and II, the Amended Complaint's allegations that the Moving Defendants had notice of Cunningham's dangerous propensity to sexually assault vulnerable people in his charge are plausible and sufficient.  It was reasonably foreseeable that placing Cunningham in a position where he could assault additional children would result in harm.  Furthermore, had the Moving Defendants not placed Cunningham in a position where he could cause harm despite knowing of his dangerous propensity, or had they supervised him appropriately, Plaintiff would not have been sexually assaulted and thereby injured.

This Court should reject the Diocese's argument, raised only in passing, that it was not Cunningham's employer.  The Amended Complaint alleges, and the Diocese cannot reasonably deny, that the Diocese determined the placement and duties of priests within the Diocese,

including Cunningham. "Whether [the Diocese] exercised sufficient supervision and control over [Cunningham] to qualify as a joint employer is essentially a factual issue" inappropriate for resolution on a motion to dismiss. *Gargano v. Diocese of Rockville Ctr.*, 888 F. Supp. 1274, 1278 (E.D.N.Y. 1995), *aff'd,* 80 F.3d 87 (2d Cir. 1996). *See also*; *LaFrantz*, 2024 WL 216718, at *3 (considering the Brooklyn Diocese and a parish church within it to be joint employers of priest for purposes of a motion to dismiss); *Guerriero v. Diocese of Brooklyn*, No. 21-CV-4923 (MKB), 2024 WL 2826097, at *3 n.4 (E.D.N.Y. Mar. 28, 2024) (same).

### B. The Moving Defendants Owed Plaintiff a Duty as Landowners

"Under New York law, 'landowners and business proprietors have a duty to maintain their properties in reasonably safe condition,'" which "may extend to controlling the conduct of third persons who frequent or use the property." *Marasligiller v. City of New York*, 217 F. App'x 55, 57 (2d Cir. 2007) (*quoting Di Ponzio v. Riordan*, 89 N.Y.2d 578, 582–83 (1997). "[A]n owner of realty has a duty to maintain its property in a safe condition[,] which includes undertaking minimal precautions to protect the public from reasonably foreseeable criminal acts of third persons." *C.Q.*, 2021 WL 4942802, at *6 (alterations in original) (*quoting Polomie v. Golub Corp.*, 640 N.Y.S.2d 700, 701 (N.Y. App. Div. 3d Dep't 1996)). Under New York law, the owners and operators of church facilities can be liable, as landowners, when they expose invitees to a known danger that they might be sexually assaulted by others present by permission. *See, e.g.*, *Caroleo v. The Roman Catholic Diocese of Brooklyn*, No. 519979/2019, 2021 NY Slip Op. 31445(U), 2021 WL 1667172, at *6 (N.Y. Sup. Ct. Apr. 28, 2021) (denying motion to dismiss because defendants "owed a duty of care to plaintiff because, among other things, plaintiff was an invitee on property that defendants owned and/or operated"); *see also LaFrantz,* 2024 WL 216718 *4 (explaining that "Defendants had a duty to Plaintiff by virtue of their status as landowners" where it was reasonably foreseeable that Plaintiff would be on their property).

The Moving Defendants breached their duty as landowners by exposing Mr. Lynch—an invitee on their premises—to the known dangers Cunningham posed, by not supervising Cunningham, and by allowing Cunningham to attempt to rape Plaintiff. *LaFrantz*, 2024 WL 216718 *4.

This Court should decline the Diocese's invitation to take judicial notice of documents that purport to show that the Diocese does not own the premises where Plaintiff was assaulted. "Federal courts have 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings' offered in conjunction with a Rule 12(b)(6) motion." *Env't Servs., Inc. v. Recycle Green Servs., Inc.*, 7 F. Supp. 3d 260, 270 (E.D.N.Y. 2014). "If the court takes judicial notice [of documents], it does so in order 'to determine what statements [they] contained'—'but again not for the truth of the matters asserted.'" *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (citations omitted). The statements in the documents must also not be "subject to reasonable dispute." *Costello v. Flatman*, LLC, 558 F.App'x 59, 60 (2d Cir. 2014). And the more important an issue is to the ultimate disposition of a case, the less appropriate judicial notice becomes, because a court "should not go outside the record to supply a fact that is an essential part of a party's case." *Pina v. Henderson*, 752 F.2d 47, 50 (2d Cir. 1985).

Here, the Court should decline to take judicial notice. The records submitted by the Diocese—even if authentic, which the Diocese has not established—are not conclusive of the issue whether the Diocese owed a duty to those invited onto Good Shepherd property. For example, as the Diocese correctly concedes, an out-of-possession landlord that is responsible for security at a given property can be held liable as a landowner. *Tabriz v. P.G.K. Luncheonette, Inc.*, 124 A.D.3d 626, 628 (N.Y. App, Div. 2d Dep't 2015). There are no facts in the Complaint or in the records submitted by the Diocese concerning whether or to what extent the Diocese

remains responsible for security on property occupied by the Parish. Indeed, the Diocese's website acknowledges that the Diocese "has the mission to oversee its 185 parishes," including the Parish.[3] Thus, even if the Court were to take judicial notice, and even if those records established beyond cavil that the Diocese is not a landowner (which they do not), the records the Diocese submits in support of its motion would not be dispositive of the issue whether the Diocese owed Plaintiff a duty of care. The Court therefore should decline to take judicial notice. *See Guerriero v. Diocese of Brooklyn*, No. 21-CV-4923 (MKB), 2024 WL 2826101, at *3 (E.D.N.Y. May 22, 2024) (denying request to take judicial notice of a parish's certificate of incorporation, the deed for the parish property, and a copy of a map from the New York City Automated City Register Information System showing ownership information for parish property on a motion to dismiss).

C. *Moving Defendants Owed Plaintiff a Fiduciary Duty Because of Their Unique Relationship with Him*

Under New York law, a church or religious entity owes a fiduciary duty to a parishioner when that individual's relationship with the church extends beyond that of a typical parishioner. *Doe v. Holy See (State of Vatican City)*, 793 N.Y.S.2d 565, 568 (N.Y. App. Div. 3d Dep't 2005). For example, a fiduciary duty arises when the relationship is such that the church exercises "*de facto* control and dominance" and the plaintiff is "vulnerable and incapable of self-protection." *Marmelstein v. Kehillat New Hempstead*, 11 N.Y.3d 15, 22 (2008). Whether such a fiduciary duty exists is a "fact-specific question to be determined by the fact-finder, such that breach of fiduciary duty claims should not generally be dismissed before the parties have the opportunity to conduct discovery." *DiGiorgio v. Roman Catholic Diocese of Brooklyn*, No. 520009/2019,

---

[3] *See* Diocese of Brooklyn, "Parish Directory," (webpage) *available at* https://www.bqcatholic.org/directories/parishes/ (last visited June 3, 2025).

2021 WL 1578326, at *7 (N.Y. Sup Ct. Apr. 22, 2021).

Plaintiff adequately alleges a unique relationship with the Moving Defendants sufficient to support a jury finding that a fiduciary duty existed. Both of Plaintiff's parents worked for the St. Raphael, and Plaintiff attended elementary school there before attending high school at a Diocesan high school with the goal of becoming a priest. When Plaintiff's father died unexpectedly, a Bishop working for the Diocese—who was a close friend of Plaintiff's family, and whom Plaintiff viewed as a mentor—arranged for Plaintiff to continue attending school tuition-free, while Plaintiff's mother remained employed by the Diocese at St. Raphael, and Plaintiff himself worked at St. Raphael while studying at the Diocese's high school. Under these circumstances, a reasonable jury could find that Plaintiff was uniquely vulnerable to the predations of a sex offender operating within the Diocese, with the Moving Defendants' tacit approval, and that Plaintiff was within the Moving Defendants' *de facto* control.

## IV.      Plaintiff Adequately Alleges Gross Negligence

The Moving Defendants argue that Plaintiff's cause of action for gross negligence must be dismissed for the same reasons that his negligence causes of action must be dismissed. That argument fails for the same reasons as Moving Defendants' arguments concerning the negligence claims for relief fail. They also argue that the Amended Complaint fails to allege intentional or reckless conduct.

To make out a claim for gross negligence, a plaintiff must allege conduct "of an 'aggravated character' that 'evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing.'" *LaFrantz*, 2024 WL 216718, at *5. Here, Plaintiff alleges that the Diocese, having actual notice that Cunningham had sexually assaulted other minors and vulnerable people whom the Diocese entrusted to him as a spiritual leader, failed to remove him from service or take other appropriate steps to protect the vulnerable persons entrusted to him.

16

By maintaining Cunningham's status as a priest notwithstanding their knowledge of his history of criminal sexual assaults against vulnerable parishioners in his care, the Moving Defendants knowingly or recklessly created a risk—indeed a probability—that Cunningham would continue to abuse devout children and young adults like Plaintiff, who had been raised to respect priests, to view them as God's messengers on Earth, and to trust them not only with their physical safety but also with the wellbeing of their eternal souls. Plaintiff was irreparably harmed by Cunningham's sexual assault, and the Moving Defendants knew that such a result was likely when they intentionally exposed Plaintiff to a known sexual predator. These allegations are sufficient to support a cause of action for gross negligence.

## V.     Plaintiff's Claims for Infliction of Emotional Distress are Not Time-Barred and are Adequately Pleaded

The Moving Defendants assert that Plaintiff's claim for intentional infliction of emotional distress (IIED) and negligent infliction of emotional distress (NIED) are based solely on the meeting at which Plaintiff was compelled to confront his abusers, outside the presence of anyone who might offer him counsel or support, and at which senior representatives of the Moving Defendants defended the abusers and derided Plaintiff. They argue that Plaintiff's IIED and NIED claims are time-barred because no criminal sexual activity took place at that meeting.

Plaintiff concedes that his IIED and NIED causes of action would be time-barred if they were based solely on the forced confrontation. However, those claims for relief are not based on the forced confrontation alone. The allegations supporting them incorporate by reference the entirety of Plaintiff's factual allegations, including the allegations concerning the sexual assaults he suffered because of the Moving Defendants' intentional, reckless, and negligent acts. (*See* Am. Compl. ¶¶ 155, 164.) Plaintiff's IIED and NIED causes of action are timely because they arise out of, and include, the attempted rape he suffered at the hands of the Moving Defendants'

17

employee. *Dixon v. Reid*, 744 F. Supp. 3d 323, 328 (S.D.N.Y. 2024). Dismissal therefore is not warranted.

The Moving Defendants further argue that Plaintiff fails to allege "extreme and outrageous conduct" as is required to make out a claim for IIED. That argument also fails.

To plead a cause of action for intentional infliction of emotional distress, a plaintiff must allege "four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993). "The conduct alleged must be 'so outrageous in character, so extreme in degree, as to go beyond all reasonable bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Blanco v. Success Acad. Charter Sch., Inc.*, 722 F.Supp.3d 187, 217 (S.D.N.Y. 2024).

Plaintiff adequately alleges all of these elements. Protecting a pedophile and continuing to entrust vulnerable people to his care and unsupervised custody, while knowing that he has previously assaulted children and young adults under similar circumstances and thus is likely to do so again, goes beyond all reasonable bounds of decency. When the Moving Defendants chose to engage in that extreme, outrageous, and utterly intolerable conduct, they knew that doing so was likely to cause severe emotional distress to Cunningham's future victims, potentially including Plaintiff, but chose to do so anyway. Their conduct caused Plaintiff severe emotional distress, which he continues to suffer to this day.

Plaintiff also adequately alleges his claim for negligent infliction of emotional distress. New York recognizes three distinct forms of that tort. As applicable here, "[u]nder the 'direct duty' theory [of NIED liability] a plaintiff has a cause of action for negligent infliction of

emotional distress if she suffers an emotional injury from defendant's breach of a duty which unreasonably endangered her own physical safety." *Ranta v. City of New York*, 481 F. Supp.3d 115, 118 (E.D.N.Y. 2020). As set forth in detail above, the Moving Defendants breached duties of care owed to Plaintiff. Plaintiff's physical safety was unreasonably endangered as a result, causing Plaintiff emotional distress.

### VI.   Plaintiff's Claim for Breach of Fiduciary Duty is Not Impermissibly Duplicative of His Negligence Claim

Finally, the Parish argues that Count IX of the Complaint, alleging breach of fiduciary duty, must be dismissed as duplicative of Plaintiff's cause of action for negligence.

Dismissal of the breach of fiduciary duty claim is not warranted. While Plaintiff cannot obtain duplicative awards of damages on his negligence and breach of fiduciary duty claims, the federal rules permit pleading in the alternative. Accordingly, Plaintiff should be permitted to proceed on two different theories of liability arising from the same operative facts.

### CONCLUSION

For all of the reasons and based upon all of the authorities cited herein, the motions to dismiss filed by the Diocese and the Parish Defendants should be denied in their entirety. In the alternative, should the Court determine that Plaintiff has failed adequately to allege any of his claims for relief, Plaintiff respectfully requests leave to replead.

Dated: New York, NY
        June 4, 2025

Moskowitz Colson
Ginsberg & Schulman, LLP

By: _____
        Eylan Schulman
        Peter R. Ginsberg
        Christopher Neff

Attorneys for Plaintiff

## WORD COUNT CERTIFICATION

Pursuant to Local Civil Rule 7.1, I certify that the foregoing Memorandum of Law

contains 6,013 words, excluding the caption, table of contents, table of authorities, and signature

block. This certification was prepared in reliance on the word-count function of Microsoft

Word, the word processing software with which the document was prepared.

Dated: New York, NY
        June 4, 2025

Moskowitz Colson
Ginsberg & Schulman, LLP

By: _____
        Eylan Schulman
        Peter R. Ginsberg
        Christopher Neff

Attorneys for Plaintiff